UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BRUCE SKOORKA, <br><br> **Plaintiff,** <br><br> v. <br><br> **KEAN UNIVERSITY, The STATE OF NEW JERSEY, The BOARD OF TRUSTEES OF KEAN UNIVERSITY, KEAN FEDERATION OF TEACHERS, et al.,** <br><br> **Defendants.** | Civ. No. 16-3842 (KM) <br><br> **OPINION** |

## KEVIN MCNULTY, U.S.D.J.:

The Council of New Jersey State College Locals, the Kean Federation of Teachers, and the American Federation of Teachers (collectively, "Union Defendants"), with support from the State of New Jersey, Kean University, Board of Trustees of Kean University, Kenneth Green, Joy Moskovitz, Jeffrey Toney, and Dawood Farahi (collectively, "Kean Defendants"), have moved for sanctions in the form of a filing injunction and attorneys' fees against the plaintiff, Dr. Bruce Skoorka, under Rule 11 of the Federal Rules of Civil Procedure. Though this motion stems from a complaint filed in June 2016 (ECF no. 1), it has its roots in previous cases (both in federal and state court) going as far back as 2001. After reviewing the actions of Dr. Skoorka in this case and taking into account his *pro se* status, I will deny the motion for sanctions under Rule 11 and will not at present grant the defendants' request for attorneys' fees or for a filing injunction.

1

## I. Summary of Litigation

### a. Current Complaint

The current iteration of this litigation began with Dr. Skoorka filing a complaint in the Southern District of New York on June 2, 2016. (ECF no. 1)[1] In this complaint, he makes claims under Title VII of the Civil Rights Act (42 U.S.C. § 2000e), the New Jersey Conscientious Employee Protection Act (N.J.S.A. 34:19-1 *et seq.*), the New Jersey Law Against Discrimination (N.J.S.A. 10:5-1 *et seq.*), the New York City Human Rights Law (Administrative Code of the City of New York, § 8 *et seq.*), and the New York State Human Rights Law N.Y. Exec. Law § 290 *et seq.*) (*Id.* ¶¶ 237–313.) After an initial screening of the complaint by the Pro Se Litigation Office of the Southern District (ECF no. 2), the Honorable Ronnie Abrams concluded that the complaint concerned events occurring in New Jersey and that Dr. Skoorka's allegations were insufficient to satisfy Title VII's venue provisions for the case to proceed in that District. (ECF no. 3, at 2–3.) She thus transferred the case to this District *sua sponte*. (*Id.*) The Kean Defendants then moved to dismiss the complaint on a variety of grounds, including failure to follow a previous order barring the assertion of new claims, *res judicata*, and waiver preemption. (*See* ECF no. 8.) The Union Defendants joined the motion, contending that Dr. Skoorka has been "engag[ing[ in frivolous litigation" and noting that "[n]ot a single action has ever been fully adjudicated in his favor." (ECF no. 9.) Dr. Skoorka opposed the motion (ECF no. 12), but then requested a 120-day stay on the litigation due to "hardship and inequity." (ECF no. 16.) That request was denied. (ECF no. 18.) The motion to dismiss has yet to be decided.

In April 2017, the Union Defendants then filed a motion for sanctions pursuant to Rule 11. (ECF no. 22.) Specifically, they asked for Dr. Skoorka to be sanctioned for the filing of the most recent complaint filed in the Southern

---

[1] Given that this motion references documents from different dockets, citations that are not from the Docket no. 16-3842 (the docket in which this motion for sanctions was filed) will be preceded by the corresponding docket number, i.e., (Docket No. --, ECF no. --.)

2

District, to pay their attorneys' fees incurred in preparing a response to that complaint, and to be enjoined from filing any other action against them without express leave of the Court. (*Id.* at 37 (Brief in Support of Motion).) The Kean Defendants joined the motion, requesting the same relief. (ECF no. 23.) Both parties cited the tortured legal history between themselves and Dr. Skoorka in their briefs, which I will address in more detail below.

### b. History Involving Litigants

The litigation history between Dr. Skoorka and both groups of defendants stretches as far back as 2001.[2] Dr. Skoorka was a tenured associate professor of Economics and Finance at Kean University. (McGovern Cert., Ex. A, at 1.) He filed a complaint in the Law Division of the Superior Court of New Jersey in Union County, where he complained of religious discrimination, retaliation for being a whistleblower, and other unlawful employment actions. (McGovern Cert., Ex. B.) After various summary judgment decisions and appeals, Dr. Skoorka lost at trial. *See Skoorka v. Kean Univ.* [*Skoorka* 2015], No. 09-3428, 2015 WL 3533878, at *24 (D.N.J. June 2, 2015).[3]

In 2007, Mr. Skoorka then filed an action in federal district court, which was docketed as Civ. No. 07-1629. *Skoorka* 2017, at *1 (explaining that the case was later refiled in 2009 as Civ. No. 09-3428). He again sued the Kean Defendants and the Union Defendants. *Id.* Now, he asserted that the defendants had retaliated against him for asserting his rights in the previous, unsuccessful state court action. *Id.* I partially disposed of that action on summary judgment. *Id.* At the time, I stated that the bulk of Dr. Skoorka's allegations "fail[ed] to meet the minimal threshold . . . there is not sufficient evidence to permit an inference that they occurred at all, that defendants had

---

[2] A fuller and more detailed account of the litigation in federal court up until June 2017 can be found in my prior opinion in *Skoorka v. Kean Univ.* [*Skoorka* 2017], No. 09-3428/14-4561, 2017 WL 2838459 (D.N.J. June 30, 2017).

[3] Specifically, I found that Dr. Skoorka "attempted to revive a litany of rejected claims" with this new complaint and that this complaint "lack[ed] for the most part evidence sufficient to create a genuine issue of fact that is material to a federal or state cause of action." *Skoorka* 2015, at *1.

3

anything to do with them, or that they were retaliatory." *Id.* (quoting the summary judgment opinion, at page 7, Docket No. 09-3428, ECF nos. 130–31). In 2014, Dr. Skoorka filed a substantially similar complaint in the District Court for the Southern District of New York, claiming that it was not possible for him to obtain a fair hearing of his claims in New Jersey. *Id.* at *2 (quoting Mr. Skoorka's brief in opposition to a motion for transfer). Venue was immediately transferred back to this district and the transferred case was assigned to me. *Id.* This action, Dr. Skoorka then argued, was (despite all outward appearances) not a mere duplicate of the 2007 action, but an update of the claims contained within the 2007 complaint. *Id.*

I consolidated the two actions and permitted Dr. Skoorka to resubmit an amended version of his complaint, redrafted as an update of his earlier claims. *Id.* I specifically instructed Dr. Skoorka to "state clearly, with dates, places, and names of participants, the acts that he alleges post-date those encompassed by the [2007 complaint] . . . and not rehash the history of events already subject to the [2007 complaint] and summary judgment motions." *Id.* at *2–3 (quoting the Consolidation Opinion, Docket No. 14-4561, ECF no. 137). Dr. Skoorka submitted a "First Supplemental and Amended Complaint." I granted nearly all of the defendants' motion to dismiss that First Supplemental and Amended Complaint with prejudice. *Id.* at *10.

It was during those proceedings that Dr. Skoorka filed a *second* complaint in the Southern District of New York. That second complaint, like its predecessor transferred to this District, is the operative complaint in the above-captioned action. It is also the subject of this motion for sanctions, and is referred to herein, unless otherwise specified, as the "Complaint." *Supra* Section I.a. Since the filing of the sanctions motion, both groups of defendants have brought to my attention to the filing of still more complaints in other jurisdictions. On April 10, 2017, Dr. Skoorka filed another complaint against the same defendants in the Eastern District of New York, with Docket No. 17-2178. (ECF. no. 30, ex. A.) Then, on July 10, 2017, Dr. Skoorka filed another

4

complaint in the Supreme Court of the State of New York, County of New York, with Index No. 100957/17. (ECF no. 36 (attachment).) Although worded and formatted differently, both complaints make similar allegations and assert essentially the same causes of action. (ECF no. 30, ex. A; ECF no. 36 (attachment).)

## II. Rule 11 and Sanctions Standard

Rule 11 of the Federal Rules of Civil Procedure requires that any "pleading, written motion, or other paper" filed or submitted to the Court "not be[ ] presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b). The goal of Rule 11 is accountability, *Keister v. PPL Corporation*, 677 Fed. App'x 63, 68 (3d Cir. 2017), and its central purpose is to deter baseless filings. *Howe v. Litwark*, 579 Fed. App'x 110, 115 (3d Cir. 2014) (quoting *Cooter & Geil v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990)).

Should this principle be violated and an appropriate sanction desired, "a motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates [the rule]." R. 11(c)(2). After notice is served pursuant to Rule 5, a 21 day period is triggered whereby the party served may withdraw or appropriately correct the challenged paper or claim. *See* R. 11(c)(2). If after notice and a reasonable opportunity to respond, the court determines that there has been a violation, the court may impose an appropriate sanction on the party that violated the rule. R. 11(c)(1). However, any sanction imposed must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. R. 11(c)(4). Though the party moving for the rule may obtain monetary penalties, the purpose of the rule is *not* to shift fees. *See Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Account*, 618 F.3d 277, 297 (3d Cir. 2010) ("Rule 11's primary purpose is not wholesale fee shifting but [rather] correction of litigation abuse." (quotation marks omitted)). Rule 11 also does not function as an automatic penalty for losing and should not be applied to

5

adventuresome, though responsible, lawyering that advocates creative legal theories. *Id.*

"It is well-settled that the test for determining whether Rule 11 sanctions should be imposed is one of reasonableness under the circumstances, the determination of which falls within the sound discretion of the District Court." *Brubaker Kitchens, Inc. v. Brown*, 280 Fed. App'x 174, 185 (3d Cir. 2008) (quoting *Gary v. Braddock Cemetery*, 517 F.3d 195, 201 n. 6 (3d Cir. 2008)). Furthermore, the District Court has substantial discretion to determine the nature and extent of a sanction. *Napier v. Thirty or More Unidentified Fed. Agents, Emps., or Other Officers*, 855 F.2d 1080, 1091 (3d Cir. 1988) (citing *Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 157 (3d Cir. 1986)). Among the sanctions available to the Court are monetary penalties and filing injunctions. *See, e.g.*, *Toll v. American Airlines, Inc.*, 166 Fed. App'x 633, 634–35, 637 (3d Cir. 2006) (upholding the District Court's decision to dismiss a case against a *pro se* plaintiff for failing to comply with pre-filing injunctions and an award of attorneys' fees issued under Rule 11(c)).

*Pro se* litigants are not shielded from the sanctions offered by Rule 11. *Wong v. Bank of N.Y.*, No. 14-5212, 2016 WL 1597309, at *3 (D.N.J. Apr. 21, 2016) (noting, however, that a court may take into account a *pro se* plaintiff's status as someone who is "untutored in the law" (citation omitted)). However, *pro se* litigants are given greater leeway in following the technical rules of pleading and procedure. *Metropolitan Life Ins. Co. v. Kalenevitch*, 502 Fed. App'x 123, 125 (3d Cir. 2012) (quoting *Tabron v. Grace*, 6 F.3d 147, 153 n.2 (3d Cir. 1993)). Nevertheless, this is not to be interpreted as a free pass to conduct litigation outside of the bounds imposed on represented litigants in federal court. *See McNeil v. United States*, 508 U.S. 106, 113 (1993) ("Our rules of procedure are based on the assumption that litigation is normally conducted by lawyers. While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed . . . , we have never suggested that procedural rules in ordinary civil litigation should be interpreted

6

so as to excuse mistakes by those who proceed without counsel." (citations omitted)).

In general, filing injunctions against *pro se* litigants are extreme remedies and should be used sparingly. *McPherron v. District Attorney of County of Chester*, 621 Fed. App'x 704, 710 (3d Cir. 2015) (quoting *In re Packer Ave. Assocs.*, 884 F.2d 745, 747 (3d Cir. 1989)); *see also Brow v. Farrelly*, 994 F.2d 1027, 1038 (3d Cir. 1993) (noting that broad power conferred onto the federal courts by the All Writs Act, 28 U.S.C. § 1651(a), to enjoin "abusive, groundless, and vexatious litigation" is bounded by the two fundamental tenets of the legal system: the right to due process and access to the courts). There are three prongs which must be met before issuing a filing injunction. *Mina v. Chester County*, Nos. 15-5452/16-1013, 2016 WL 4039651 (E.D. Pa. July 28, 2016) (holding that *Brow* laid out a three factor test). First, they are not appropriate unless there are "exigent circumstances like the continuous abuse of the judicial process by filing meritless and repetitive actions." *Brow* at 1032. Second, the Court must give notice to the litigation to show cause why the proposed injunctive relief should not issue. *Id.* at 1038. Third, they must be narrowly tailored to fit the particular circumstances of the case before the court. *Id.*; *see also McPherron* at 710, 711 (vacating an order enjoining a *pro se* plaintiff from "filing any new action or proceeding in the District Court without first obtaining leave of the Court" despite finding the plaintiff to be an "abusive litigant" since it precluded him from filing future actions of any kind).

Similarly, monetary sanctions under Rule 11 in the form of attorneys' fees are granted in only exceptional cases. *Ahn v. Korea Advanced Inst. of Sci. & Tech.*, No. 14-1987, 2014 WL 6455593, at *9 (D.N.J. Nov. 17, 2014) (citing *Doering v. Union Cty. Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988)). In fact, it is only appropriate when it is clear that a claim has absolutely no chance of success on the merits. *Doering*, 857 F.2d at 194 ("[R]ule 11 is violated only when it is patently clear that a claim has absolutely no chance of success."); *see also Liggon-Redding v. Estate of Sugarman*, 659 F.3d 258, 263

(3d Cir. 2011) ("Rule 11, however, is a sanction of last resort."); *Keister v. PPL Corp.*, 318 F.R.D. 247, 256 (M.D. Pa. 2015) ("Rule 11 sanctions should never be viewed as a general fee shifting device. By and large federal courts are bound by the "American Rule," requiring parties shoulder their own legal expenses.") (quoting *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 483 (3d Cir. 1987)). The overall purpose of a monetary sanction under Rule 11 is thus to deter frivolous litigation and unnecessary motions rather than to compensate the opposing party for the costs of litigation. *See* Fed. R. Civ. P. 11 Advisory Committee Notes to 1993 Amendment.[4]

The Third Circuit, in conjunction with the Advisory Committee Notes to Rule 11, have expounded certain factors to consider when determining the appropriate sanction for a violation of Rule 11. I am expected to consider, among other things, "whether the improper conduct was willful, or negligent; whether it was part of a pattern of activity, or an isolated event; whether it infected the entire pleading, or only one particular count or defense; whether the person engaged in similar conduct in other litigation; whether it was intended to injure; what effect it had on the litigation process in time or expense; whether the responsible person is trained in the law; what amount, given the financial resources of the responsible person, is needed to deter that person for repetition in the same case; what amount is needed to deter similar activity by other litigants." Fed. R. Civ. P. 11 Advisory Committee Notes to 1993 Amendment.

---

[4] "Since the purpose of Rule 11 sanctions is to deter rather than to compensate, the rule provides that, if a monetary sanction is imposed, it should ordinarily be paid into court as a penalty. However, under unusual circumstances, particularly for (b)(1) violations, deterrence may be ineffective unless the sanction not only requires the person violating the rule to make a monetary payment, but also directs that some or all of this payment be made to those injured by the violation. Accordingly, the rule authorizes the court, if requested in a motion and if so warranted, to award attorney's fees to another party." Fed. R. Civ. P. 11 Advisory Committee Notes to 1993 Amendment.

## III. Appropriateness of Sanctions

### a. Pre-filing injunction against Skoorka

It is clear from the case law that filing injunctions are granted in only exceptional cases. I do not find Dr. Skoorka's actions in this case to merit such an action, especially in light of his status as a *pro se* plaintiff. Thus, I will deny the motion of the Union Defendants and the Kean Defendants for such an injunction.

The Union Defendants have complied with the second prong of *Brow* by providing notice to Dr. Skoorka of their intent to sanction him. (ECF no. 22, ex. H)[5] Further, it is conceivable that I could craft an injunction narrow enough to satisfy the third *Brow* factor. Still, I will err on the side of leniency and find that Dr. Skoorka has not yet engaged in "the continuous abuse of the judicial process by filing meritless and repetitive actions." *Brow* at 1032. Dr. Skoorka has filed claims against the defendants in other jurisdictions. It is up to those courts—if appropriate—to dismiss them as duplicative or (in the case of federal-court actions) transfer them back to this court. Thus these actions, while numerous and in some cases duplicative, have not yet created any "exigent circumstances" which would merit the issuing of a filing injunction. *See, e.g., Shawe Potter Anderson & Corroon LLP*, No. 17-1348, 2017 WL 6397342, at *5 (D. Del. Dec. 8, 2017) (declining to issue a filing injunction against a plaintiff who filed a series of lawsuits in various jurisdictions that sought to "attack" the Delaware Court of Chancery's final decision and instead choosing to issue a "strike two" warning to plaintiff); *U.S. Bank Nat. Ass'n v. Gunn*, No. 11-1155, 2012 WL 8999550, at *3–4 (D. Del. Mar. 16, 2012) (declining to issue a filing injunction after litigant had filed four law suits in state court and one in federal court since it did not find that those actions rose to the level of a pattern of groundless and vexatious litigation given litigant's *pro se* status); *cf. Danihel v. Office of President*, 640 Fed. App'x 185, 186–89 (3d

---

5    So far, Dr. Skoorka has not expressed his intent to withdraw the complaints he has filed in the other jurisdictions.

9

Cir. 2016) (holding that the District Judge did not abuse his discretion in issuing a pre-filing injunction after a *pro se* plaintiff had filed four motions for contempt and three writs of error in conjunction with a second complaint after the first had been dismissed on jurisdictional grounds and was on appeal).

I follow the lead of those cases, however, in going no farther than to issue a "strike two" warning. In no sense should this ruling be interpreted as encouragement. Dr. Skoorka's repetition of his many claims, sometimes with minimal variations, may at some point rise to the level of requiring an injunction.[6] This *pro se* plaintiff is advised that he will succeed only by producing evidence in support of his claims, not by simply reasserting them in new forums.

For now, however, although his conduct has surely been vexatious in the ordinary sense of the word, Dr. Skoorka has not yet perfected a course of conduct that would support a filing injunction.

### b. Monetary Sanctions/Attorneys' Fees

Particularly in light of the ruling above, I will not at the present time impose monetary sanctions in the form of attorneys' fees. Given that Rule 11's sanctions are only appropriate in exceptional cases where a claim is clearly meritless, I do not find such an imposition appropriate here. Though Dr. Skoorka's claims are similar to complaints he has filed in the past, they are distinct in that they are basically grounded in claims of alleged retaliatory actions made against him after each successive complaint and are not "completely meritless." *See Doering*, 857 F.2d at 194.

I understand the concerns raised by the defendants, who have been in litigation with Dr. Skoorka for over fifteen years. There comes a point beyond which a litigant cannot simply daisy-chain claims *ad infinitum,* each time claiming that the defendant is "retaliating" for the unsuccessful claim immediately preceding. Still, I will not anticipate events. The motion for

---

[6] The quality of the claims, too, may at some point will play a role in the Court's analysis. *See Skoorka v. Kean University*, No. 09-3428, 2015 WL 3533878 (D.N.J. June 2, 2015).

10

sanctions is denied, albeit without prejudice to reassertion should developments in the case warrant such action.

## IV. Conclusion

I will deny motion for sanctions under Rule 11 by the Union Defendants and the Kean Defendants and will deny the request for a filing injunction and attorneys' fees against Dr. Skoorka.

An appropriate order follows.

Dated: December 21, 2017

Kevin McNulty
United States District Judge