**Kevin P. McGovern, Esq.**
**WEISSMAN & MINTZ**
**220 Davidson Avenue, Suite 410**
**Somerset, N.J. 08873**
**(732) 563-4565**
**Attorney ID # 029311993**
kmcgovern@weissmanmintz.com
**Attorneys for Union Defendants**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **Bruce Skoorka,** | **Civil Action No. 16-3842 (KM) (MAH)** |
| **Plaintiff,** | |
| **v.** | **CERTIFICATION OF KEVIN P. MCGOVERN, ESQ.** |
| **Kean University, The State of New Jersey, The Board of Trustees of Kean University, Kean Federation of Teachers, Council of New Jersey State College Locals and the American Federation of Teachers,** | |
| **Defendants** | |

I, KEVIN P. MCGOVERN, hereby certify and declare as follows:

1. I am an attorney at law licensed to practice in the State of New Jersey and senior counsel at the law firm of Weissman & Mintz. I have primary responsibility over the handling of the above captioned matter and make this certification in support of Union Defendants' request for leave to re-file their motion for summary judgement.

2. On March 4, 2024, the court issued a preliminary decision denying the Union Defendants' motion for summary judgement in the above matter. At the conclusion of its decision, the court indicated that it would "consider entertaining a motion to file a renewed summary judgment motion at the appropriate time. Such a motion must be based, among other things, on a letter explaining the extent to which the parties have worked, post March 2024, with United States Magistrate Judge Hammer to narrow their dispute or resolve it." (Exhibit A, page 4).

3. On March 19, 2024, a settlement conference was scheduled before Judge Hammer for May 13, 2024. (ECR177). That conference was subsequently adjourned until July 16, 2024. (ECR178).

4. Prior to the July 16, 2024 conference, and at the request of Judge Hammer, Union Defendants sent a confidential settlement memorandum to the court advising that they were willing to settle the case and specifying their settlement authority.

5. The settlement conference before Judge Hammer scheduled for July 16, 2024 was adjourned at the request of counsel for the Kean Defendants, who had recently been substituted into the case. (ECR179, ECR180, ECR182). The conference was rescheduled for October 9, 2024. (ECR182).

6. The settlement conference scheduled for October 9, 2024 was adjourned at the request of Plaintiff, made on October 1, 2024. (ECR187, ECR188). The settlement conference before Judge Hammer was rescheduled for January 15, 2025. (ECR189).

7. On January 14, 2025, Plaintiff contacted the court to advise that he was ill and could not attend the settlement conference scheduled for the following day. (ECR191). The conference was rescheduled for April 11, 2025. (ECR193).

8. The settlement conference took place as scheduled on April 11, 2025. At the conference, the parties agreed to a suggestion by Judge Hammer that he make a "double-blind" settlement proposal, which would be separately communicated to the parties, who would then respond separately. Judge Hammer did so via email that day, following the conference.

9. On May 5, 2025, the Kean and Union Defendants jointly advised Judge Hammer via email that they would accept the proposal made by the court in full and final settlement of all legal matters presently pending between the parties, including the above reference matter.

10.   Later in the day on May 5, 2025, Judge Hammer advised the Kean and Union Defendants that the double-blind settlement proposal had been rejected by Plaintiff.

11.     On May 29, 2025 the parties held a status conference on the record before Judge Hammer to discuss next steps. (ECR195). During the conference, I pointed out to the court that having rejected the double-blind settlement proposal, Plaintiff had not provided Defendants with a settlement figure that he would accept. (Exhibit B, p. 5-6.)

12.     I also expressed to the Court, on behalf of the Union Defendants, the continued willingness to engage in settlement discussions, but that continued discussions would require more clear and focused direction from Plaintiff regarding his settlement position. (Exhibit B, p. 12).

13.     During the conference, Judge Hammer sought Plaintiff's input on an acceptable settlement figure, but Plaintiff informed the court that he would provide a settlement figure over the phone. (Exhibit B, p. 15).

14.     At the conclusion of the conference, the Union Defendants were given until Friday, July 11, 2025 to file a letter with the court seeking leave to re-file their motion for summary judgement. (Exhibit B, p. 16).

15.     Since the telephone conference of May 29, 2025, Union Defendants have not received anything in writing from Plaintiff reflecting a settlement amount that would be acceptable to him.

16.     In addition to the proceedings held before Judge Hammer, there have been separate efforts to settle all pending matters in the context of a pending State Court case, entitled Skoorka v. Kean et. al., Civil Action No. 2930-22(the "State Court case"), which involves the same parties participating in the federal court case.

17.     On March 27, 2024, a court-ordered mediation session took place before the appointed mediator, William J. Wolf, of the law firm of Bathgate, Wegener & Wolf.

18.     I attended the court-ordered mediation on behalf of Union Defendants with an authorized settlement proposal. Representatives of the State Attorney Generals office appeared on behalf of the Kean Defendants. Plaintiff was represented at the mediation by counsel, David Krenkel, Esq. (Exhibit C).

19.     Plaintiff did not appear at the mediation. In his absence, counsel for the respective parties were released by the mediator and the mediation did not proceed. However, after the mediator released counsel for the parties, Plaintiff did arrive, informing the mediator that he had gotten lost on the way. (Exhibit C).

20.     Prior to being released, counsel for Plaintiff informed myself and the DAG's in attendance that he had not been authorized to settle the matter for any amount. Thus,

any offer made by the Union and/or Kean Defendants at the mediation would have been rejected.

21.    In sum, since March 2024, Union Defendants have actively participated in two separate attempts to settle the pending federal court litigation.  After several adjournments (none of which were sought by Union Defendants) we participated in the April 11, 2025 settlement conference before Judge Hammer. As a result of that conference, the Union Defendants, along with the Kean Defendants, accepted the "double-blind" proposal made by the court that would have resolved all pending matters. Plaintiff rejected that offer and, as of this writing, he has not made a specific counter offer which Union Defendants might be able to respond to.

22.    In addition to the proceedings before the federal court, Union Defendants also participated in court-ordered mediation of the pending State court case. Union Defendants attended the mediation with an authorized settlement figure intended to resolve all pending matters, but were advised by Plaintiff's counsel that he was not authorized to accept any offer. Plaintiff did not attend the mediation, having gotten lost on the way. (Exhibit C).

23.    In terms of narrowing the legal issues in dispute (Exhibit A, p. 4) there is only one legal issue pending

before the court, which is whether the union breached its duty of fair representation to Plaintiff with respect to the scheduling and eventual withdrawal of grievances filed by the union on his behalf. (Exhibit B, p. 8). Other legal claims previously made by Plaintiff have been dismissed. (Exhibit B, p. 9).

24. Since March 2024, Union Defendants have done everything in their power to engage in good faith settlement negotiations with Plaintiff in an attempt to resolve this matter as well as the pending State court case. We remain willing to continue those discussions. However, at this point, we respectfully request leave to refile our motion for summary judgement, as contemplated by the Court's preliminary decision of March 4, 2024.

I certify that the foregoing statements made by me are true. I am aware that if the foregoing statements made by me are willfully false, I am subject to punishment.

Kevin P. McGovern, Esq.

Dated: July 11, 2025

# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**Not for Publication**

| Bruce M. Skoorka, *Plaintiff*, v. Kean University, et al., *Defendants*. | Civil Action No. 16-3842(MEF)(MAH) **ORDER** |
|---|---|

For the purposes of this Order, the Court assumes full familiarity with the procedural history and facts.

The Defendants[1] move for summary judgment. (Docket Entry 141) The motion is denied, without prejudice to an appropriately-timed motion to file an additional summary judgment motion.

* * *

The Court previously dismissed all but one claim against the Defendants. See generally Opinion of June 26, 2018 ("Opinion"). The remaining claim is for Title VII retaliation. See id. at 20-21, 27-28. To make out a claim of Title VII retaliation, a plaintiff must mainly show that an adverse action was taken in retaliation for Title VII protected activity. See Selvato v. SEPTA, 658 F. App'x 52, 56 (3d Cir. 2016).

The pro se Plaintiff's claim boils down to this: the Defendants did not take certain steps to support the Plaintiff's grievances against his employer, after the employer scheduled a tardy hearing. See Plaintiff's Memorandum of Law in Opposition to Union Defendants' Motion for Summary Judgment ("Opposition Brief") at 16-18, 25-28. The Plaintiff alleges the Defendants' inaction was retaliation for a then-pending lawsuit the Plaintiff had filed against the Defendants. See id.

[1] The moving Defendants are: Council of New Jersey State College Locals, the Kean Federation of Teachers, and the American Federation of Teachers.

There is evidence from which a rational factfinder could determine the Defendants' inaction was, indeed, retaliation.

The Plaintiff testifies to being told, a few days after demanding action by the Defendants on his grievances, "words to the effect of why should we do anything for you?" by the president of one of the Defendants.  Plaintiff's Deposition at 354:9-21

At that time, the Plaintiff was suing the Defendants for alleged Title VII violations.  See Skoorka v. Kean University et. al., 2015 WL 3533878 (D.N.J. 2015).  Two of the Defendants had filed a summary judgment motion, which was then pending.  See Motion for Summary Judgment, Skoorka (Docket Entry 119).

In that context, the Plaintiff testifies that he understood the alleged statement by the union president as "[i]mplying that the union was refusing to take remedial action against [sic] me in retaliation for my pending lawsuit against the union." Plaintiff's Deposition at 354:14-17.

A rational factfinder could agree with the Plaintiff's understanding.  On that understanding, the Defendants' inaction on the Plaintiff's behalf was retaliation for Title VII-protected activity he had undertaken.

The Defendants offer a potentially compelling response: even if there was retaliatory intent, it did not matter, because there was nothing to be done.  Why?  Because (a) the relevant collective bargaining agreement limited what the Defendants could do to support the Plaintiff's grievance, see Reply Brief in Support of Union Defendants' Motion for Summary Judgement ("Reply Brief") at 5-7, and (b) it would not have been helpful for the Defendants to try to take extra-contractual actions.  See id. at 5-10.

All of this may be correct.  But these arguments are not developed by the Defendants in sufficient detail.

At the summary judgment stage, a motion must be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Dupree v. Younger, 598 U.S. 729, 737 (2023).

The Defendants have not made this "show[ing]."

The Defendants argue that their strategy was "the one it was

obligated by the contract to follow." Reply Brief at 6. They base this on contractual language that the grievance procedure is the "sole and exclusive" means of enforcing the contract. See id.

It may be that the Defendants were boxed in, and as a legal matter could pursue only the approach they did. But this argument is underdeveloped. It is made with only glancing reference to the contract, and with no meaningful reference to New Jersey contractual and labor law, which presumably govern here.[2]

And in a related vein, the Defendants also state that, under the contract, the only possible remedy for a tardy hearing was escalating grievances to binding arbitration. See id. at 7. That escalation could not have been pursued for months, the Defendants argue, because of their own committee-meeting schedule. See id. at 7. But why not schedule an internal meeting by phone and try to move forward?[3]

Moreover, the Defendants do not meaningfully address the possibility of pursuing extracontractual remedies that could (at least conceivably) have had an impact. Some of these, like staging a protest, seem to fall onto one end of the spectrum. But others, like picking up the phone and pressing management, are perhaps more realistic to undertake. (And showing that an extracontractual approach simply could not have worked as a matter of law may possibly requires some sense of how that approach had worked in the past.)

---

[2] The Defendants focus on the steps they may or may not have been required to take as a matter of a union's federal law duties. See Brief in Support of Union Defendants' Motion for Summary Judgment ("Motion for Summary Judgment") at 18-19 (citing Vaca v. Sipes, 386 U.S. 171 (1967)). But satisfying the (relatively low) hurdle of a floor-setting background duty is not the same as affirmatively showing that there was nothing meaningful the Defendants could have done for the Plaintiff. Of course, at the end of the day the Defendants might be able to establish only that there was a low chance that they could have done anything affirmative for the Plaintiff. This might or might not be enough to support judgment as a matter of law (though it could well suggest that any damages here are very low).

[3] Though the Defendants argue that the Plaintiff did not want to arbitrate, see Motion for Summary Judgment at 26, there is no suggestion they contemporaneously presented him with the possibility of arbitration on a faster timeline.

In light of the above, the Defendants' motion for summary judgment is denied.

Given that they may be able to better develop their legal argument, the Court will consider entertaining a motion to file a renewed summary judgment motion at an appropriate time. Such a motion must be based, among other things, on a letter explaining the extent to which the parties have worked, post-March 2024, with United States Magistrate Judge Hammer to narrow their dispute or resolve it.

IT IS on this 4th day of March, 2024, so **ORDERED**.

Michael E. Farbiarz, U.S.D.J.

# EXHIBIT B

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

BRUCE M. SKOORKA,

Plaintiff,

vs.

KEAN UNIVERSITY, et al.,

Defendants.

Case No. 16-3842

Newark, New Jersey
May 29, 2025

TRANSCRIPT OF HEARING
BEFORE THE HONORABLE MICHAEL A. HAMMER
UNITED STATES MAGISTRATE JUDGE

APPEARANCES (the parties appeared via video conference):

For the Plaintiff: BRUCE M. SKOORKA
453 Shearer Avenue
NJ 07083
Pro Se

For Kean University, et al.: LEONARD C. LEICHT, ESQ.
Marshall, Dennehey, Warner, Coleman & Goggin, LLP
425 Eagle Rock Avenue
Suite 302
Roseland, NJ 07068
(973) 618-4100

Audio Operator:

Transcription Service: KING TRANSCRIPTION SERVICES, LLC
3 South Corporate Drive, Suite 203
Riverdale, NJ 07457
(973) 237-6080

Proceedings recorded by electronic sound recording (not all parties were discernible on the record); transcript produced by transcription service.

(APPEARANCES continued)

For Kean Federation of Teachers, et al.:

KEVIN PATRICK MCGOVERN, ESQ.
Weissman & Mintz LLC
220 Davidson Avenue
Suite 410
Somerset, NJ 08873
(732) 563-4565

 (Commencement of proceedings)

THE COURT: All right. Good afternoon, everyone. This is Judge Hammer.

We are on the record in Dr. Bruce Skoorka versus Kean University, et al., Civil No. 16-3842.

Do I have Dr. Skoorka on the line?

MR. SKOORKA: Yes.

THE COURT: All right. Good afternoon, Mr. Skoorka.

Is there anybody else with you? Is any counsel with you? I know --

MR. SKOORKA: No.

THE COURT: I'm sorry?

MR. SKOORKA: No.

THE COURT: Okay. Just you. All right.

And then who do I have for the Kean defendant?

MR. LEICHT: Good afternoon, Judge. It's Leonard L-e-o-n-a-r-d, Leicht, L-e-i-c-h-t, from Marshall Dennehy.

THE COURT: Gate. Thank you very much.

And then how about for the teachers union Kean Federation defendants?

MR. MCGOVERN: Good afternoon, Your Honor. Kevin McGovern, Weissman & Mintz, for the Council of New Jersey State College Locals as well as the Kean Federation of

Teachers and the American Federation of Teachers.

THE COURT: Okay. Thank you.

All right.

So, I guess, let me ask this first -- I'd be remiss if I didn't come back to this, given the amount of work that went into it.

Since the April 11 settlement conference and the mediator's proposal that I issued later that day -- and I know that was not successful in resolving the case -- and I'll start with you, Dr. Skoorka, have the parties had any follow-on conversations or discussions either internally or externally that would make it advisable to continue to talk settlement?

I thought we had made a fair amount of progress at the April 11th conference. And if there's any chance, obviously, to settle it as opposed to more summary judgment motion practice, which would be the next step, and then if it -- well, certainly at least the Kean University defendants, trial preparation, maybe it's something to discuss.

But I really am at the mercy of the parties here.

So, Dr. Skoorka, how about on your side?

MR. SKOORKA: Well, the parties -- justify more discussion.

THE COURT: All right. So if I'm -- because you're

coming in a little bit muffled, but what I -- if I understood correctly, you're saying there haven't been any other discussions.

Has your position on the mediator's proposal changed at all?

MR. SKOORKA: No. The -- about it that -- about it that -- my opinion hasn't changed.

THE COURT: All right.

How about on the defense side?

MR. LEICHT: Judge, it's Mr. Leicht.

We've had no further discussions, Judge, with Dr. Skoorka. So I don't know how else to answer the question.

THE COURT: I mean, I want to help try and resolve the case if there's anything there.

But, Dr. Skoorka, I've got to say, I can only do so much. At some point I need help from the parties.

So I'd like to throw it out there. In terms of trying to advance the settlement ball, what would the parties suggest, if anything?

MR. MCGOVERN: Your Honor, this is Kevin McGovern on behalf of the Union defendants.

I think the thing we're struggling with at the moment is what -- we don't have a settlement demand from the plaintiff. And given the context of the settlement

discussions we've had, you know, a number was put on the case --

THE COURT: Right.

MR. MCGOVERN: -- that was unsuccessful, unfortunately.

And so we don't have a sense as to what the difference is between the number proposed through mediation and what number would ultimately lead to an agreement. We don't have a sense from plaintiff or his counsel or his -- the counsel that was assisting in this matter.

THE COURT: Right. Mr. Goldberg. Right.

MR. MCGOVERN: Right. That's right. That's right.

So we don't have a sense of those things.

So, again, we know what plaintiff will not accept, which was the mediator's number. We don't know what he will --

THE COURT: That's a fair point.

Yeah, I mean, it's -- so, Dr. Skoorka, so you can understand what Mr. McGovern is basically saying they can't negotiate against themselves. I don't think I'm telling any tales out of school, but they would have accepted the proposal, had you accepted it.

Obviously, you didn't. Okay. That's your decision.

But for the case to have any chance at settling,

they would need to know what your demand is so they can understand (A) what that demand is and the difference between that demand and the proposal that I had made.

MR. SKOORKA: You're asking?

THE COURT: Indeed, I am.

MR. SKOORKA: Okay. No -- the -- complaint, in fact, the -- of the very detailed last section of the -- damages. It specifies, right there -- back pay -- libel --

THE COURT: Can I interrupt for a second -- because I'm barely understanding -- hearing -- Mr. McGovern, Mr. Leicht, can you hear Dr. Skoorka?

UNIDENTIFIED SPEAKERS: No, Judge.

MR. SKOORKA: Can you hear me now?

THE COURT: A little better, yeah.

It's not a volume -- it's that it's muffled.

It's a little better, Dr. Skoorka.

MR. SKOORKA: I think if I fiddle around with the phone, I'll lose it.

THE COURT: Okay. So I'm sorry keep going.

If you could just restate what you had said.

MR. SKOORKA: Basically in the lawsuit that I -- the original complaint but all the lawsuits, not just to our case or the -- cases that were merged, have a very, very detailed last section itemizing the various damages.

And I anticipate the length of trial and having the

jury -- to hear argument with regard to the damages, and it's my judgment that there are -- damages are much higher than -- talk about in the settlement conference.

It was just -- we're just not talking the -- here.

THE COURT: Did I understand that to mean, your settlement demand would include as well the claims from the other cases, the 2009 case --

MR. SKOORKA: --

THE COURT: No. It's just this case, you're saying.

MR. SKOORKA: That's why I said, each separate case, the four federal ones and the other cases, have a details section at the end of the complaint that details the damages in that -- and, by the way -- I don't consider -- some kind of administrative procedure --

THE COURT: Right.

MR. SKOORKA: --

THE COURT: But what's left in this case, the only thing that would go to trial would be the Title VII retaliation claims against both Kean and the Union defendants. Right? Kean would be -- even then, Kean would be limited to the 2015 transfer from the teaching to the nonteaching position. And as to the Union, it would be based on the alleged failure by the Union to press your grievances versus Kean.

Everything else, other -- the NJLAD retaliation claims, the discrimination harassment claims, the New York state claims, the CEPA claims were all dismissed. So the case is substantially narrowed --

(Simultaneous conversation)

MR. SKOORKA: -- without any legal argument.

THE COURT: I'm sorry?

MR. SKOORKA: They were dismissed willy-nilly without any legal argument.

THE COURT: But they're not coming back into the case. That's --

(Simultaneous conversation)

THE COURT: -- that's the problem that you have. They're gone.

However, whether you disagree with Judge Farbiarz's ruling -- or, actually, I think it was Judge McNulty at the time, his ruling, those claims are not coming back into the case. They're not going to be relitigated.

So we're down to the transfer on the Kean defendant's side and the failure to press your grievances versus Kean on the Union side.

I just want to make sure that you understand that, because when you talk about what your analysis was in the complaint originally, that was predicated on all of those claims still being in the case. And that's just not where

this case is, and it's certainly not with what would go to trial.

Look, I am not expecting a sudden change of heart today. I would welcome any progress that we could make on the settlement front.

But, perhaps, I would ask Dr. Skoorka maybe to reflect on that. Obviously, I'll leave it to your discretion as to whether you want to consult further with Mr. Goldberg.

And I'll make this offer to all the parties -- Dr. Skoorka, Kean University, and the Federation and Council defendants, if at any point between now and as long as the case is in front of the district court, the parties think that we should reconvene to take another run at settlement, please just -- all you have to do is let me know, and I will do anything I can to try to facilitate that. All right?

That having been said, since we have all of the discovery done in the case and I know the Kean defendants made a motion for summary judgment, Judge Farbiarz denied that in his December 4, 2023, ruling because there was a genuine issue of material fact about the causal connection.

But on the Union side, in his March 4, 2024, ruling, Judge Farbiarz denied that motion without prejudice.

So let me start with Mr. McGovern. Do I understand correctly that your clients would want to renew that motion?

MR. MCGOVERN: That would be correct, Your Honor,

although, as I read Judge Farbiarz's original decision, I had understood that refiling would be a function of the Union's application to the Court and a showing that we had attempted to narrow the issues and attempted to settle the dispute in good faith.

THE COURT: So I'm glad you raised that because I wanted to make sure that my reading was in line with the parties.

When he said such a motion must be based, among other things, on a letter explaining the extent to which the parties have worked post March 2024 with me to narrow their dispute or resolve it -- because this isn't a situation -- right? -- where unlike some cases a party basically claims, "Well, I can't oppose or fully address the summary judgment motion because of some remaining discovery issue." This isn't that.

What I read it to mean is "I want you folks to go out and try to settle this Hammer."

And I wanted to see if that was consistent with the parties' reading of that.

MR. MCGOVERN: That's how I understood the order, Your Honor, that Judge Farbiarz wanted some -- a letter -- I think he specified -- from the Union --

THE COURT: Yeah.

MR. MCGOVERN: -- explaining our involvement and

willingness to, again, narrow the dispute, although there is really only one legal issue relevant to the unions, as well as try and settle the dispute.

And so I think there would be a preliminary step involved --

THE COURT: Right.

MR. MCGOVERN: -- before we file the motion.

THE COURT: But let me ask this: Do you, having done the settlement conference and really run that to ground, is there any other effort that we should undertake, before you send that letter, to narrow the dispute or resolve it? If there is, I am not identifying it myself.

So ...

MR. MCGOVERN: I understand, Your Honor.

All I can say is that the Union have been and remain willing to engage in settlement negotiations. Again, we're being asked, I think, to bid against ourselves, which I have a difficult time doing.

But I would love to take Your Honor up on your offer to continue these conversations. If we had clear and more focused direction from plaintiff and his counsel relative to what might settle the case, we would remain willing and happy to attempt to resolve this case.

But failing that -- and, again, if we're going to take next steps, the next step I think would be a letter to

Judge Farbiarz explaining the Union's involvement and the role in the settlement process.

THE COURT: All right.

Mr. Leicht, I don't know if you have a position on this?

MR. LEICHT: No. Obviously not -- obviously no -- Judge, no, we don't have any position on this, and we take no position on this.

I do have a position on behalf of Kean, but certainly if the Union feels that summary judgment is appropriate and they've gone through their procedural hoops, they should feel free to -- as far as we're concerned, they should file the motion.

THE COURT: All right.

Mr. Skoorka, do you have any thoughts on that or position?

MR. SKOORKA: First of all, I'd like to make a qualification here. First of all, I'm pro se. I don't have legal counsel in this case.

THE COURT: I'm sorry. I'm just not understanding what you're saying.

Did counsel understand what Dr. Skoorka's saying? It's too muffled for me to understand --

(Simultaneous conversation)

MR. LEICHT: I heard something about pro se --

(Simultaneous conversation)

MR. SKOORKA: I technically do not have counsel in this -- suit. I'm pro se.

THE COURT: No. I think -- right. I think we all understand that you've represented yourself throughout the process.

I think he was referring to Mr. Goldberg who showed up with you for the April 11th settlement conference.

MR. SKOORKA: Yeah. I just wanted to make that clear.

The other thing is if there is going to be another summary judgment -- excuse me -- another summary judgment brief by the Union, I consider that two bites at the apple, and I want -- filing of my own.

THE COURT: All right. Well, I think -- look -- let me ask this to you, Dr. Skoorka: Do you see a reason that -- before we go down that road, do you see a reason that we should have another settlement conference?

MR. SKOORKA: Not unless the real issues are resolved.

THE COURT: The real issue in this case at the end of the day, like in any --

(Simultaneous conversation)

MR. SKOORKA: -- we have to go to trial, the way I see it. I mean, I'll think on it, and I'll -- we're just too

far apart.

THE COURT: Well, in terms of a dollar demand, maybe I missed it, and if so, I apologize --

(Simultaneous conversation)

MR. SKOORKA: -- it's $8 million --

THE COURT: I'm sorry?

MR. SKOORKA: -- my reputation is at stake. At stake. It's ruined. My career is ruined. I mean, we're talking about -- damages here, and a couple of hundred thousand dollars isn't going to do it. I spent more than a million dollars just on legal fees -- pro se.

THE COURT: Well, certainly not in this case you haven't.

MR. SKOORKA: -- not going to go away for a couple of hundred thousand dollars.

THE COURT: So what is the actual dollar demand after all of our discussions about the case?

MR. SKOORKA: -- I'm not going to give you a dollar demand over the phone here --

THE COURT: All right. Well, then I can't help. Okay? I can only do so much, Dr. Skoorka, but if you're going to make it impossible --

(Simultaneous conversation)

THE COURT: -- to have a meaningful, responsible conversation about settlement, then this is what we're going

to do.

Mr. McGovern, you'll send your letter in to Judge Farbiarz -- I don't know -- by the end of next week. Okay?

MR. MCGOVERN: Your Honor, if I might, given our discussion today, I would ask for the opportunity to request the transcript of this conversation --

THE COURT: Fine.

MR. MCGOVERN: -- as to present to Judge -- well, I think it's important that the judge be aware of --

THE COURT: I am not disagreeing with you.

MR. MCGOVERN: Oh, okay.

So I would ask for a copy of the transcript. Maybe I could submit the letter, say, 30 days after receipt of the transcript, if that makes sense.

THE COURT: I'd like to have a little more of a control date given that the case nine years old.

So why don't we say this? So by July 11th. Okay?

MR. MCGOVERN: Understood.

THE COURT: If Dr. Skoorka, if you're going to send any letter --

MR. SKOORKA: Yes.

THE COURT: -- to Judge Farbiarz in response --

MR. SKOORKA: July 11th is in the middle of OAL hearings.

THE COURT: Okay --

 (Simultaneous conversation)

THE COURT: You'll send a letter to Judge Farbiarz by July 18th.

And I'll leave all parties with this: Despite the difficulties in trying to settle this case -- and I really mean this, Dr. Skoorka and all counsel -- I am always available to the parties in this case to have a meaningful settlement conference.

But, Dr. Skoorka, you have to understand the basic rules or, for lack of a better term, physics of how settlement negotiations work. Regardless of my mediator's proposal, which I will just simply add for the record, I put an extraordinary amount of time, preparation, and effort into devising, in light of the remaining claims, the potential damages, the risks of to both sides if the case were to go to trial -- I put a lot of time to that. Notwithstanding that, I'm putting that to the side -- the defendants cannot negotiate against themselves. I think they've been very forthright, that they would have taken the mediator's proposal.

That's not enough for you? Okay. Fine. Again, that is your decision, entirely in your discretion as the litigant.

But they cannot negotiate and I can't help the parties negotiate unless you give them an actual dollar

figure because if this case ultimately settles, it is almost invariably going to be for a sum certain. And without a demand, it's impossible for them to have any active role in trying to negotiate a resolution, and it's impossible for me, as the mediator in this case, to be of any use to either side.

So I would ask you to consider that. And if the parties believe that we should reconvene, all you need to do is simply shoot a quick letter to the Court, and I will move other cases around if I have to to get you in here as promptly as possible.

With that, we will adjourn for today. And I hope everybody has a good evening. All right --

(Simultaneous conversation)

MR. SKOORKA: -- for more --

THE COURT: Go ahead, Dr. Skoorka.

MR. SKOORKA: -- I would also like to have a copy of the recording of these proceedings. According to the announcement made at the beginning of the proceeding, that transcript is going to be summarized. Right? I don't want a summarized copy. I want the whole enchilada.

THE COURT: Well, you can order that from the court report, same as defense counsel, Dr. Skoorka. It would not be summarized. It would be a complete transcript.

MR. SKOORKA: The notice given at the beginning

said it was being recorded and summarized.

THE COURT: Well, I don't know about the --

(Simultaneous conversation)

THE COURT: Anything would be reduced to a transcript, the parties are able to order that from the court reporter.

All right?

Have a good afternoon, everyone --

(Simultaneous conversation)

THE COURT: We're adjourned.

MR. MCGOVERN: Judge, I'm sorry.

THE COURT: Go ahead. Go ahead.

MR. LEICHT: I'm sorry, Judge. It's Leonard Leicht from Marshall Dennehey.

One thing we sort of broached at the last conference, Judge, and it relates to Rule 26, I still don't know what the damages are that plaintiff contends he suffered as a result of the alleged Title VII violation. Rule 26, the disclosures didn't give me anything. You know --

THE COURT: Wait. You're raising --

(Simultaneous conversation)

THE COURT: -- initial disclosure deficiency nine years after the case is filed.

Am I understanding that right?

MR. LEICHT: I am not raising it as a deficiency.

What I'm saying, Your Honor, is I don't even understand what the base is for a damages claim at this late stage.

I don't know what Dr. Skoorka's claiming in terms of damages.

THE COURT: Well, what actually relief are you asking of the Court?

MR. LEICHT: I'm asking for the opportunity --

(Simultaneous conversation)

MR. LEICHT: -- to file a --

(Simultaneous conversation)

MR. SKOORKA: There's a section in each of the complaints. There's details --

THE COURT: The complaint, Dr. Skoorka, is not the same as the Rule 26 disclosures --

(Simultaneous conversation)

THE COURT: You know what? The parties can set their positions in writing to the Court, and the Court will take it under advisement.

But I want to make a couple of things clear.

One, Dr. Skoorka, whatever the complaint may have said, the complaint is a pleading. It is certainly not a substitute for initial disclosures under Rule 26. The Federal Rule of Civil Procedure are rather clear about that.

But, Mr. Leicht, the time for raising essentially

discovery disputes or disputes about the adequacy of Rule 26 disclosures has long since passed.

So whatever relief you want to ask of the Court, need to keep that in mind. All right?

Gentlemen, we are adjourned. Have a good afternoon.

(Conclusion of proceedings)

Certification

I, SARA L. KERN, Transcriptionist, do hereby certify that the 22 pages contained herein constitute a full, true, and accurate transcript from the official electronic recording of the proceedings had in the above-entitled matter; that research was performed on the spelling of proper names and utilizing the information provided, but that in many cases the spellings were educated guesses; that the transcript was prepared by me or under my direction and was done to the best of my skill and ability.

I further certify that I am in no way related to any of the parties hereto nor am I in any way interested in the outcome hereof.

S/ *Sara L. Kern* July 1, 2025

Signature of Approved Transcriber Date

Sara L. Kern, CET**D-338
King Transcription Services, LLC
3 South Corporate Drive, Suite 203
Riverdale, NJ 07457
(973) 237-6080

# EXHIBIT C

# BATHGATE, WEGENER & WOLF

## MEMORANDUM

TO: David Krenkel, Esq.
Daniel Davis, Esq.
Lex Hubbard, Esq.
Kevin P. McGovern, Esq.

FROM: William J. Wolf

DATE: March 27, 2024

RE: Bruce Skoorka v. Kean University, et al

---

Dr. Skoorka arrived at my office today (3/27/24) at 12:45 p.m. He said he had been lost. He said he did not intend to stay. He only wanted to find my office and use the men's room. I told him I would guide him to the Parkway Northbound. He thanked me for offering to guide him. He followed me to Exit 89 on the Parkway.

I sent, by email, a copy of this memo to each of you.

WJW/fdg